FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

00 APR 20 ....

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| GEORGETTE WOOD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CV 99-PT-3350-E |
| | ) |
| COOPER CHEVROLET, INC., | ) |
| | ) |
| Defendant. | ) |

ENTERED

APR 20 2000

## MEMORANDUM OPINION

This cause comes to be heard on defendant Cooper Chevrolet, Inc.'s ("Cooper" or

"defendant") Motion to Compel Arbitration or to Stay all Proceedings Including Discovery, filed

January 20, 2000.

## BACKGROUND

Plaintiff Georgette Wood ("Wood" or "plaintiff") purchased a used 1997 Chevrolet

Cavalier from Cooper on September 21, 1998. The automobile was manufactured out of state

and delivered into Alabama. Wood obtained financing through America's First Federal Credit

Union. During the purchase transaction, Wood executed a document titled "Sales Contract and

Security Agreement" which itemized the amount financed. Wood also executed a document

titled "Retail Buyer's Order" which contained an "Arbitration Agreement" (the "Agreement") in

the lower left hand portion of the document. The Agreement states in pertinent part:

> Buyer/Lessee acknowledges and agrees that the vehicle purchased or leased
> herein has traveled in interstate commerce. Buyer/Lessee thus acknowledges that

1

16

the vehicle and other aspects of the sale, lease or financing transaction are involved in, affect, or have a direct impact upon, interstate commerce. Buyer/Lessee and dealer agree that all claims, demands, disputes, or controversies of every kind or nature that may arise between them concerning any of the negotiations leading to sale, lease or financing of the vehicle, terms and provisions of the sale, lease or financing agreement, arrangements for financing, purchase of insurance, purchase of extended warranties or service contracts, the performance or condition of the vehicle, or any other aspects of the vehicle and its sale, lease or financing shall be settled by binding arbitration conducted pursuant to the provision of 9 U.S.C. Section 1 et. seq. and according to the Commercial Rules of the American Arbitration Association.... Either party may demand arbitration by filing with the American Arbitration Association a written demand for arbitration along with a statement of the matter in controversy. A copy of the demand for arbitration shall simultaneously be served upon the other party. The buyer/lessee and the dealer agree that the arbitration proceedings to resolve all such disputes shall be conducted in the city where dealer's facility is located.

Plaintiff filed suit on December 20, 1999, alleging violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1640 et seq., based on Cooper's allegedly false representations in its itemization of the amount financed. Defendant filed its answer and this motion to compel binding arbitration on January 20, 2000.

## DISCUSSION

### A. Parties' Contentions

Defendant argues that the transaction at issue affected interstate commerce and therefore falls within the ambit of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq.. Under the FAA and numerous Supreme Court decisions, Cooper asserts, courts are to give ample regard to the federal policy favoring arbitration. This policy, Cooper asserts, applies even when considering statutory rights, citing Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 23 (1991); Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 480-483 (1989); Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 238-242 (1987); Mitsubishi

2

Motors Corp. v. Soler Chrysler- Plymouth, 473 U.S. 614, 629 (1985).  Cooper argues that the

Supreme Court in McMahon created the analytical framework employed by courts when

determining whether binding arbitration of a statutory claim is allowable.  Under that test,

Cooper asserts that plaintiff cannot, and has not, shown that the  binding arbitration agreement

between them should not be enforced.  Specifically, Cooper contends that alleged violations of

the TILA are arbitrable, relying on Thompson v. Illinois Title Loans, Inc., 2000 WL 45493 (N.D.

Ill. 2000); Sagal v. First USA Bank, N.A., 69 F.Supp.2d 627 (D.Del. 1999); and Lopez v. Plaza

Finance Co., 1996 WL 210073 (N.D. Ill. 1996).  Cooper asserts that plaintiff's argument that the

Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691 et seq., forbids requiring the waiver

of any rights under a federal consumer protection statute as a condition for the extension of credit

is simply misplaced because arbitration, Cooper argues, does not deny statutory rights.  Rather it

simply  moves them from a judicial forum to an arbitral forum.  Finally, Cooper asserts that the

arbitration filing fees are not excessive, that the AAA allows for reduction or deferral of the fees,

and that if the court decides that arbitration may be denied solely because of the fees, then it will

pay the filing fees and the costs of the arbitration, subject to realignment at the end of the process

by the arbitrator.

Wood argues that, in enacting the TILA, Congress intended to create a statutory right to

class action suits for plaintiffs, relying on Senate Report 93-278.  Wood also calls upon the

general acceptance of class action suits as an important mechanism in consumer protection,

citing  Deposit Guaranty Nat'l Bank of Jackson, Miss. v. Roper, 445 U.S. 326 (1980).  Based on

her theory of a statutory right to class action law suits under the TILA, Wood argues that

requiring a consumer to agree to binding arbitration as a condition for extending credit is a

3

violation of the ECOA because class actions are not arbitrable, citing Caldwell v. KFC Corp.,

958 F.Supp. (D.N.J. 1997); and Owens v. Magee Fin. Serv., 476 F.Supp. 758 (E.D. La. 1979).

Lastly, Wood asserts that the arbitration clause is unenforceable because she will have to pay the

arbitration costs, which will effectively eviscerate any remedy she might receive under the TILA,

relying on Palidino v. Avnet Computer Technologies, Inc., 134 F.3d 1054 (11th Cir. 1998); and

Randolph v. Green Tree Financial Corp., 178 F.3d 1149 (11th Cir. 1999), cert. granted, __ S.Ct.

__, 2000 WL 122150 (U.S. April 3, 2000).

## B. Analysis

### 1. The FAA & the TILA

Congress enacted the FAA pursuant to its broad Commerce Clause powers.  See Prima

Paint Corp. v. Flood & Conlin Mfg. Co., 388 U.S. 395, 405 (1967);  Allied Bruce Terminix

Companies, Inc. v. Dobson, 513 U.S. 265 (1995).  There is no dispute between the parties that

this case involves interstate commerce to such a degree that the FAA is implicated.  The

automobile came from out of state, is driven on interstate highways, and the Agreement, signed

by both parties, states that the transaction affects interstate commerce.  Based on this, the FAA

applies to this case.  Section 2 of the FAA provides that a:

> written provision in any maritime transaction or a contract evidencing a
> transaction involving commerce to settle by arbitration a controversy thereafter
> arising out of such contract or transaction ... shall be valid, irrevocable, and
> enforceable, save upon such grounds as exist at law or in equity for the revocation
> of any contract.

9 U.S.C. § 2.

Congress and the Supreme Court have made no bones regarding their position on

arbitration: they are in favor of it.  The Supreme Court has repeatedly noted that Congress

4

enacted the FAA to preempt state anti-arbitration laws, and to put arbitration clauses on an equal footing with a contract's other terms. See Gilmer, 500 U.S. 220, 225-26 (citing Scherk v. Alberto-Culver Co., 417 U.S. 506, 510 (1974); Moses H. Cone Memorial Hosp. v. Mercury Construction Corp., 460 U.S. 1, 24 (1983); and Mitsubishi Motors Corp., 473 U.S. 614, 626-27 (1985)); see also Allied Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 270 (1995). This pro-arbitration policy applies to statutory rights as well as common law rights. See, e.g., Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 23 (1991) (claims arising under the Age Discrimination in Employment Act (ADEA), 29 U.S.C.A. §§ 621-634, held arbitrable); Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 480-483 (1989) (claims arising under § 12(2) of the Securities Act of 1933, 15 U.S.C.A. § 771(2), held arbitrable); Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 238-242 (1987) (claims arising under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j(b), and civil claims arising under the Racketeer Influenced and Corrupt Organizations Act (civil RICO), 18 U.S.C.A. §§ 1961-1968, held arbitrable); Mitsubishi Motors Corp. v. Soler Chrysler- Plymouth, 473 U.S. 614, 629 (1985) (claims arising under the Sherman Act, 15 U.S.C.A. §§ 1- 7, held arbitrable).

The Supreme Court, in McMahon, laid out the relevant framework for courts to apply when considering the arbitrability of particular statutory claims:

> The [FAA], standing alone, therefore mandates enforcement of agreements to arbitrate statutory claims. Like any statutory directive, the [FAA's] mandate may be overridden by a contrary congressional command. The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue. If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent will be deducible from [the statute's] text or legislative history, or from an inherent conflict between arbitration and the statute's underlying purposes.

482 U.S. at 226-27 (internal citations and quotation marks omitted). Therefore, the burden is on Wood to show that the text or legislative history of the TILA indicates an intent to preclude arbitration, or to show some conflict between arbitration and the general purpose of the TILA.

In support of her position that the legislative history of the TILA indicates a Congressional intent to preclude arbitration, Wood cites to Senate Report 93-278 (June 28, 1973), which addresses a 1974 amendment to the TILA, explicitly allowing class action lawsuits. See 15 U.S.C. § 1640. It discusses the importance and utility of allowing class action lawsuits in TILA cases in order to encourage voluntary compliance and deter potential violations in accordance with the statute. Wood asserts that this discussion makes crystal clear Congress's intent to create a private, substantive class action right. Because class actions cannot be arbitrated, plaintiff asserts that arbitration would negate her right to a class action lawsuit under the TILA.

The text of the TILA, 15 U.S.C. § 1640, certainly allows for class actions. The portions of the Senate Report referred to by plaintiff explain why Congress decided to make class actions explicitly available to plaintiffs under the TILA, as described above. However, there exists a difference between the availability of the class action tool, and possessing a blanket right to that tool under any circumstance. Courts that have addressed this issue disagree with Wood's assessment of it. See Boggs v. Alto Trailer Sales, Inc., 511 F.2d 114, (5th Cir. 1975) (courts to apply FED.R.CIV.P. Rule 23 to TILA cases);[1] Perry v. Beneficial Finance Co. of NY, Inc., 81

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down on or before September 30, 1981.

6

F.R.D. 490, 494 (W.D.N.Y. 1979) (1974 amendment to the TILA, while intended to guarantee availability of class actions in the TILA suits, does not obviate plaintiff's traditional burden to meet other class action requirements); Champ v. Siegel Trading Co., Inc., 55 F.3d 269, 276-77 (7th Cir. 1995) (putative class will not be certified where the underlying individual claims are subject to individual arbitration and arbitration agreement does not explicitly allow for class arbitration, quoting 9 U.S.C. § 4). Based on this, the court is persuaded that while class actions are allowable under the TILA, plaintiffs have a right to them only insofar as is allowable under Fed.R.Civ.P. 23. Plaintiff's previous request to consolidate this case with that of Vivian D. Rawls, CV 00-BU-0093-E, was denied without opinion by Judge Clemmon on February 2, 2000 (Doc. 6). Further, there is no clause providing for class arbitration in the Agreement between Wood and Cooper.

Plaintiff also analogizes the TILA to the Magnuson-Moss Act in asserting that binding arbitration is prohibited. This court recently addressed this issue in another case. In Cunningham v. Fleetwood Homes of Georgia, et al., CV 99-PT-2605-E, the court determined that, relying primarily on Wilson v. Waverlee Homes, Inc., 954 F.Supp. 1530 (M.D. Ala. 1997); and Boyd v. Homes of Legend, 981 F.Supp. 1423 (M.D. Ala. 1997), written and express warranties (but not implied or oral warranties) were not subject to binding arbitration. In making this determination, the court looked to the legislative history and the text of the Magnuson-Moss Act. Present in regards to the Magnuson-Moss Act, and absent in regards to the FAA, is explicit language which disallows certain statutory claims to be resolved in an arbitral forum. See Wilson at 1539 ("The Commission then goes on to state that 'reference within the written warranty to any binding, non-judicial remedy is prohibited by the Rule and the [Magnuson-

7

Moss] Act.' [40 Fed.Reg.] at 60211.") (emphasis added). Such language regarding the allowance or disallowance of arbitration is completely lacking in regards to the TILA.

As to the issue of whether TILA claims are arbitrable, courts have generally answered in the affirmative.  See Dorsey v. H.C.P. Sales, Inc., 46 F.Supp.2d 804 (N.D. Ill. 1999); Stout v. J.D. Byrider, 50 F.Supp.2d 733 (N.D. Ohio 1999); Mccarthy v. Providential Corp., 122 F.3d 1242 (9th Cir. 1997); Dobbins v. Hawk's Enterprises, 198 F.3d 715 (8th Cir. 1999); Sagal v. First USA Bank, N.A., 69 F.Supp.2d 627 (D. Del. 1999); Thompson v. Illinois Title Loans, Inc., 2000 WL 454493 (N.D. Ill. 2000); Lopez v. Plaza Finance Co., 1996 WL 210073 (N.D. Ill. 1996).  Without reaching this issue, the court notes that plaintiff has failed to show this court any statutory text or legislative history which would lead to the conclusion that Congress intended the TILA to preclude binding arbitration.

**2. The TILA & the ECOA**

As an alternative tact, plaintiff contends that by being required to agree to binding arbitration as a condition for the extension of credit, she has impermissibly been required to waive her rights under the Equal Credit Opportunity Act, 15 U.S.C. § 1691(a)(3).[2]  Plaintiff contends that the contract at issue amounts to a contract of adhesion as it hinges the extension of credit upon her waiver of rights under the Consumer Credit Protection Act.  Plaintiff cites Caldwell v. KFC Corp., 958 F. Supp. 962 (D.N.J. 1997); and Owens v. Magee Fin. Serv., 476 F. Supp. 758 (E.D. La. 1979), in support of this contention.  Defendant asserts that plaintiff is not

_____

[2] This section states in pertinent part that "it shall be unlawful for any creditor to discriminate against any applicant with respect to any aspect of a credit transaction because the applicant has in good faith exercised any right under this chapter."

8

foregoing any statutory rights, but has merely agreed to assert them in an arbitral forum rather than a judicial forum.

In Caldwell, a New Jersey district court judge held that the plaintiff could not have reasonably understood when signing an employment application that he was agreeing to arbitrate a future statutory civil rights claim for retaliatory termination. 958 F. Supp. at 975. The court based its decision primarily on the poor wording of the application, the fact that the attorneys for the defendant corporation could have easily been more clear and forthcoming in their choice of words, the limited education of the applicant, and the fact that the clause was included in an application for employment, rather than an employment contract. However, the court noted that "where circumstances surrounding an agreement suggest that both parties knowingly agreed to arbitrate a particular dispute, a court ought to compel arbitration and carry out their wishes." Id.

In Owens, an Eastern District of Louisiana district court judge held that a money lender violated the Equal Credit Opportunity Act by declining to extend credit to the plaintiff without her, at least believing, that she was required to settle and release her potential The TILA claims. 476 F. Supp. at 768.

In this case, plaintiff has not given up any rights or claims. The Agreement did not state that, as a condition of purchasing the automobile, she must agree to settle and release her potential TILA claims against Cooper. Rather, the Agreement attempted to move those claims, and all others, into an arbitral rather than a judicial forum. As the defendant has pointed out, the Supreme Court has stated that, "as a general rule, statutory claims are fully subject to binding arbitration." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 34-35 (1991). When a plaintiff agrees to arbitrate her potential statutory claims, the plaintiff "does not forego the

9

substantive rights afforded by the statute," but "only submits to the resolution in an arbitral, rather than judicial forum." Id. at 26 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985)).

### 3. The TILA & Arbitration Fees

Finally, plaintiff argues that by her being required to pay the arbitration fees, her statutory rights will effectively be eviscerated, creating a conflict between arbitration and the TILA's underlying purposes, citing Palidino and Randolf. In its reply brief, Cooper states that it "will agree to pay the filing fees for a demand with the American Arbitration Association for a claim of up to Fifty Thousand Dollars ($50,000) and the costs of the arbitration as dictated by the Commercial Rules, subject to realignment at the end of the process by the arbitrator under said Rules." Def. Reply Brief at p. 17.

In Paladino, the Eleventh Circuit held that the district court correctly refused to compel arbitration of the plaintiff's Title VII claim where the arbitration agreement provided that damages could be awarded for breach of contract only. The court noted that the arbitration clause "defeat[ed] the statute's remedial purposes because it insulate[d] [the defendant] from Title VII damages and equitable relief." 134 F.3d at 1062. The court held that such a clause impermissibly waived an employee's Title VII statutory rights. Additionally, the court noted that compelling a plaintiff to pay expensive arbitration costs and filing fees constituted "a legitimate basis for a conclusion that the [arbitration] clause does not comport with statutory policy." Id.

In Randolph, the Eleventh Circuit concluded "that the arbitration clause in [that] case [was] unenforceable, because it fail[ed] to provide the minimum guarantees required to ensure that [the plaintiff's] ability to vindicate her statutory rights [under the TILA would] not be

10

undone by steep filing fees, steep arbitrators' fees, or other high costs or arbitration." 178 F.3d at 1158.  The arbitration clause in that case was silent regarding the payment of filing fees, the apportionment of the costs of arbitration, the potential case of financial hardship, or whether, if the consumer prevailed, she or he would subsequently be saddled with fees and costs in excess of any award.[3]

    This case is very similar to Randolf.  In this case, the Agreement is silent as to the payment of arbitration filing fees, the apportionment of the costs of arbitration, the potential case of financial hardship, or whether, if the consumer prevailed, she would subsequently be saddled with fees and costs in excess of any award.  The Agreement provides that the American Arbitration Association rules will govern the arbitration proceedings.[4]  While Cooper has agreed to pay the arbitration fees initially, it states that it will seek reimbursement at the completion of the proceedings.  Def. Reply Br. at 17 ("... subject to realignment at the end of the process ...").  When this court allowed arbitration in Cunningham, the defendant seeking to compel arbitration committed itself to pay for the arbitration fees without reserving the possibility of recouping those fees from the plaintiff in the future.  In this case, Cooper has not agreed to pay for the costs of arbitration in toto.  Furthermore, it is likely that any TILA award will be outweighed by the costs of arbitration.  See 15 U.S.C. § 1640(a)(1)(2)(A) (limiting amount ranges recoverable in an

_____

    [3] The Supreme Court granted certiorari in Randolf to consider both whether an order to compel arbitration is immediately appealable, and whether an arbitration clause in a retail installment contract is invalid for failing to discuss which party is responsible for the fees and costs of arbitration and what effect, if any, that has on the arbitrability of TILA claims.

    [4] The AAA rules provide that the costs will be shared equally by the parties, unless the parties agree otherwise, or unless the arbitrator assess the costs against one party, which it is authorized to do.  See AAA Commercial Arbitration Rule 49.

individual action).

> Congress stated its purpose in enacting the TILA as follows:

> The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed us of credit results from an awareness of the cost thereof by consumers. It is the purpose of this subchapter to ... protect the consumer against inaccurate and unfair credit billing and credit card practices.

15 U.S.C. § 1601(a).

Given the limits imposed on plaintiffs for recovery, if plaintiffs are bound to arbitrate and required to pay arbitration costs, it simply doesn't make good financial sense for plaintiffs to file suit to protect their TILA rights. Potential defendants can thus decrease their potential liability under the TILA by requiring arbitration and refusing to pay the arbitration costs, or seeking reimbursement at a later time. If it becomes economically unfeasible for plaintiffs to bring suit under the TILA, the purpose of the TILA will be eviscerated because potential defendants will have no incentive to abide by its provisions. "Since the TILA is a remedial statute, it is interpreted strictly in favor of the consumer. Murphy v. Household Fin. Corp., 560 F.2d 206, 210 (6th Cir. 1977)." Frazee v. Seaview Toyota Pontiac, Inc., 695 F. Supp. 1406 (D.Conn. 1988).

Taking due consideration of these factors, it is this court's conclusion that, pursuant to McMahon, arbitration in this situation, i.e. with an arbitration clause which does not address the issue of arbitration costs, creates an "inherent conflict between arbitration and the statute's underlying purposes." 482 U.S. at 227. In coming to this conclusion, the court follows what is still good law in the Eleventh Circuit, Randolph v. Green Tree, 178 F.3d 1149.

12

## C. Conclusion

Based on the foregoing, defendant's motion to compel arbitration and to stay further proceedings will be denied unless, within 10 days, the defendant agrees to pay costs of arbitration and its own attorney fees without reimbursement.  The costs will not include plaintiff's attorney fees, unless awarded by the arbitration panel.

This ___ day of April, 2000.

**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**

13